UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD T. HOLT, | ) | Case No.: 1:10 CV 2584 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| FIRST STUDENT, *et al.*, | ) | |
| | ) | MEMORANDUM OF OPINION |
| Defendants | ) | AND ORDER |

*Pro se* plaintiff Richard T. Holt filed the above-captioned *in forma pauperis* action against defendants First Student, Inc., the Equal Employment Opportunity Commission (E.E.O.C.) - Cleveland Mediation Program, and the United Steel Workers ("USWA"). Mr. Holt alleges the defendants discriminated against him "in job standards" based on his race, in violation of Title VII, 42 U.S.C. §2000e. He seeks damages in the amount of $150,000.00.[1]

*Background*

The narrative of facts contained in what Mr. Holt captions as a "Complaint" is a paragraph comprised of three sentences. He alleges the defendants provided different job standards and rates of pay for Caucasian employees versus "people of color." Attachments to the Complaint reveal First Student employed Mr. Holt, an African American, from November 2007 until his

---

[1] Although he does not specify a sum in the complaint, paragraph VII. of the Civil Cover Sheet filed with the complaint indicates a "Demand" of $150,000.

termination on September 29, 2010.[2] (Atth. at p.106.) He was employed with First Student as a bus driver. *Id*.

In an E.E.O.C. Charge of Discrimination, dated December 18, 2009, Mr. Holt alleged First Student treated him less favorably than white drivers on September 1, 2009. The charge stated he was assigned a less desirable run, received harsher discipline and was denied pay for a period of 65 hours. *Id*.

Mr. Holt filed an internal grievance, through the USWA, on November 16, 2009, complaining that First Student failed to pay him "upfront time . . . for runs;" unauthorized supervisor time changes caused him to be late; issued a warning for being late when he forgot his driver's license, while a Caucasian employee was "told to sign papers without given time," (Atth. at p. 29); and, failed to provide an aide when he transported handicapped students. It appears the matter was submitted to arbitration on January 25, 2010. (Atth. at p. 30.)

Also attached to the complaint are three Time Off Requests for April 19, 2010, May 12, 2010 and September 15, 2010 submitted by Mr. Holt. An additional request for leave on May 26, 2010 was denied by Contract Manager, Nikki McDaniel, who noted: "To [sic] many charters and already to [sic] many requests off. Sorry." (Atth. at p. 19.) Mr. Holt also attached the approved Time Off Requests for two coworkers who asked for leave on April 21, 2010 and May 27, 2010, respectively.[3]

In a letter dated September 23, 2010, Nikki McDaniel advised Mr. Holt he was being

---

[2] Each of the 107 pages of attachments filed along with the Complaint are only distinguished by a hand written page number in the upper right corner.

[3] The coworker submitted her Time Off Request for May 27, 2010 on May 24, 2010. Mr. Holt submitted his Time Off Request for May 26, 2010 on May 25, 2010.

placed on notice of unpaid suspension "while I am investigating what occurred on you [sic] am route on September 23, 2010." (Atth. p. 11.) She asked him for a written explanation of what transpired. Six days later, Ms. McDaniel sent Mr. Holt a letter dated September 29, 2010 wherein he was advised that his employment with First Student ended on September 28, 2010. Ms. McDaniel explained that Mr. Holt was fired because he was the bus driver responsible for refusing to pick up a student from school. Mr. Holt declined to sign the letter, but a Union witness did sign it. The latest document attached to the Complaint, dated November 8, 2010, is Mr. Holt's Notice that a Request for Appeal Has Been Filed from the Office of Unemployment Compensation.

*Standard of Review*

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[4] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). Plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

*No Claim Against E.E.O.C.*

---

[4] A claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

Title VII prohibits employers, employment agencies and labor unions from engaging in any actions which discriminate, in part, based on race. *See* 42 U.S.C. § 2000e-2. Accepting Mr. Holt's allegations as true and construing his *pro se* Complaint liberally in his favor does not reveal the presence of information sufficient to show that the E.E.O.C. -Cleveland Mediation Program was his employer. Instead, the Complaint identifies only First Student as his employer. Hence, the Complaint fails to state a plausible Title VII claim against the E.E.O.C. as Mr. Holt's employer. *See* 42 U.S.C. § 2000e-2(a)(1) (making it "an unlawful employment practice for an *employer* ..." (emphasis added) to engage in certain discriminatory acts against its employees).

To the extent Mr. Holt is complaining about the manner in which his E.E.O.C. charge was handled, he is not entitled to sue the E.E.O.C. The circuits which have addressed the issue have uniformly held that no cause of action against the EEOC exists for challenges to its processing of a claim." *Peavey v. Polytechnic Inst.*, 749 F.Supp. 58, 58 (E.D.N.Y.1990), *aff'd*, 940 F.2d 648 (2d Cir.1991); *see, e.g., McCottrell v. EEOC*, 726 F.2d 350, 351 (7th Cir.1984); *Ward v. EEOC*, 719 F.2d 311, 313 (9th Cir.1983), *cert. denied*, 466 U.S. 953 (1984); *Francis-Sobel v. University of Me.*, 597 F.2d 15, 17-18 (1st Cir.), *cert. denied*, 444 U.S. 949 (1979); *Georator Corp. v. EEOC*, 592 F.2d 765, 767-69 (4th Cir.1979); *Gibson v. Missouri Pac. R.R.*, 579 F.2d 890, 891 (5th Cir.1978), *cert. denied*, 440 U.S. 921 (1979), *Milhous v. Equal Employment Opportunity Com'n*, No. 97-5242, 1998 WL 152784 (6th Cir. Mar. 24, 1998); *Reed v. E.E.O.C.*, No. 96-1275, 1996 WL 636171 (6th Cir. Oct. 30, 1996).

*Failure to State Title VII Claim*

A complaint "has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 1949 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). While a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557.

As noted earlier, Title VII extends its reach to prohibit labor organizations from engaging in any practice that would "exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race." 42 U.S.C. § 2000e-2(c)(1). While Mr. Holt names the United Steel Workers as a defendant, the Complaint does not allege any facts which would support a claim against the Union based on racial discrimination.

Finally, Title VII has made it unlawful for an employer:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

-5-

42 U.S.C. § 2000e-2(a). Again, it is not enough for a Title VII plaintiff to simply state "the-defendant-unlawfully-harmed-me." This is, however, the extent to which Mr. Holt has limited his allegations against First Student.

A plaintiff's Title VII claims are limited to "the scope of the EEOC investigation reasonably expected as a result of the discrimination charge filed." *See Farmer v. ARA Servs., Inc.*, 660 F.2d 1096, 1105 (6th Cir.1981). "Claims that are not within the scope of the EEOC investigation must be dismissed for lack of subject matter jurisdiction." *Leigh v. Bureau of State Lottery*, 876 F.2d 104, 1989 WL 62509, at *2 (6th Cir. June 13, 1989). Mr. Holt's E.E.O.C. charge alleges he received a verbal and written warning from First Student on September 1, 2009, while a "similarly situated white driver . . . received no discipline." (Atth. p. at 106.) In a grievance he later filed, Mr. Holt further explained that when he forgot his license, was late for work and subsequently written up, the Caucasian employee who was late was only "told to sign papers without given time." (Atth. p. at 29).

The essence of a disparate treatment claim under Title VII is that an employee or applicant is intentionally singled out for adverse treatment on the basis of a prohibited criterion. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978). Mr. Holt has referred to one nonprotected employee who was not 'written up,' but was "told to sign papers without given time." (Atth. p. at 29). This does not suggest this employee was similarly-situated and thus an equivalent comparison. Rather, Mr. Holt alleges the nonprotected employee was directed to "sign papers" about which he either does not or cannot provide details to this Court. Because this singular event does not provide this Court with evidence that he was treated differently than similarly-situated nonprotected employees, Mr. Holt has not alleged he was treated differently strictly based on race.

Finally, while Mr. Holt was fired from First Student, this is not the basis upon which he allegedly suffered an adverse employment action. Instead, the only adverse act which he alleged was based on race, was a September 1, 2009 written reprimand. This singular act does not, however, constitute an adverse employment action.[5] A reprimand does not constitute a significant change in employment status, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir.2008)(quotation omitted). Even the mere disagreement with an employer's disciplinary decision does not give rise to an inference of discriminatory discharge in violation of Title VII. *See Bullock v. Children's Hosp. of Philadelphia*, 71 F.Supp.2d 482, 490 (E.D.Pa.1999) (stating that plaintiff's disagreement with employer's assessment of plaintiff's job performance is not sufficient to raise a presumption of discrimination).

District courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). To do so would "require ...[the courts] to explore exhaustively all potential claims of a pro se plaintiff, ... [and] would...transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.*

Conclusion

---

[5] One element of a disparate treatment claim based on race is that the employee suffered an adverse employment action. "An adverse employment action is an action by the employer that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir.2008) (quoting *Burlington Industries v. Ellerth*, 524 U.S. 742, 761(1998)), *cert. denied*, 129 S.Ct. 2380 (2009).

Accordingly, Mr. Holt's application to proceed *in forma pauperis* is granted and this action is dismissed under section 1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[6]

IT IS SO ORDERED.

/s/*SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

March 10, 2011

---

[6]   28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.